THE STATE ex inf. HERBERT S. HADLEY, Attorney-General, v. MISSOURI PACIFIC RAILWAY COMPANY, WESTERN COAL & MINING COMPANY, RICH HILL COAL MINING COMPANY and KANSAS-MISSOURI ELEVATOR COMPANY.

**In Banc, November 27, 1911.**

1. **QUO WARRANTO: Motion for Judgment on Pleadings: Admissions.** For the purposes of a motion for judgment on the pleadings, made by the Attorney-General in *quo warranto*, the statements of facts in the answer (or return) of respondents must be taken as true; and the statements in the information admitted by the answer will also be taken as true. The conclusions that either party draws from those facts are for determination by the court.

2. **———: ———: Railroad Company: Operating Coal Mines and Elevator: Statements Taken as True: Qualification.** Where it is stated in the information in *quo warranto* that two of the respondents were incorporated as coal mining companies and another as an elevator company and that the respondent railroad company has acquired the capital stock of the other three and is engaged in conducting the business for which they were incorporated, and those allegations are admitted in the answer except that it is stated that all the stock of the three companies except four shares in each is held by a trustee for the railroad company and those four shares are held by individuals to enable them to qualify as directors, statements in the answer that the purpose of the railroad company in acquiring the stock of the coal companies was to secure to itself a supply of coal to be used as fuel in operating its trains, and that the purpose in acquiring the stock of the elevator company was to facilitate the handling and shipping of grain over its road, and statements that the railroad company does not operate or control the operation of those companies, but on the contrary that each is controlled and operated by its own board of directors, and a statement that each company is performing the duties required by its charter and is serving the public impartially as the law requires, must, upon a motion by informant for judgment on the pleadings, be taken as true, with only the one qualification that the law presumes that the railroad company has exerted its power as a stockholder in electing the directors and to that extent influences the policy of each company.

3. ————: Railroad Company: Owning Stock in Mining Company
and Elevator. It is lawful for a railroad company to own the
majority of stock in a coal company adjoining or near its line of
road, and in an elevator company offering a convenient means
of aiding it in the handling and shipping of grain, where there
has been no abuse of its power and the businesses of those cor-
porations are being conducted in the usual way of such concerns.

4. ————: ————: ————: Constitution. The words of the Con-
stitution (Sec. 7, art. 12) reading, "No corporation shall engage
in business other than that expressly authorized in its charter
or the law under which it may have been or hereafter may be
organized," do not refer to the ownership of stock by one cor-
poration in another company; nor do they forbid a railroad com-
pany to own a coal mine and operate it for the sole purpose, if
necessary, of obtaining fuel for its own use, or to own and operate
an elevator to facilitate the handling and shipping of grain over
its railroad; nor do they prohibit a railroad company to secure
itself in the matter of obtaining coal for fuel, or in the conven-
ience of handling and shipping grain, by acquiring stock in a coal
or elevator company, if such course would be more convenient in
the carrying on of its legitimate business as a carrier and ship-
per, and if the public is not injured thereby. Nor will the bare
fact that the railroad company owns all or all but a few shares
of the stock of the mining and elevator companies be held to be
an abuse of the power which such ownership implies.

## Quo Warranto.

WRIT OF OUSTER DENIED.

*Herbert S. Hadley*, Attorney-General, *Elliott W.
Major*, Attorney-General, and *John Kennish*, Assist-
ant Attorney-General, for informant; *F. W. Lehmann*
of counsel.

(1)   The respondent, the Missouri Pacific Rail-
way Company, has violated the provisions of its char-
ter, the Constitution, laws and public policy of the
State of Missouri, and has been guilty of a usurpation
of franchise by becoming the owner of all of the stock
in said coal companies and elevator company, and by
conducting, controlling and operating the business

and affairs of each of these companies.  Said Missouri Pacific Railway Company was not authorized by its charter, the laws or Constitution of the State to hold the stock or to engage in the operation of the business of coal mining companies or elevator companies, as the ownership of such stock and the conduct and operation of the business of said companies are alleged and admitted not to have been necessary or incident to the construction, maintenance or operation of said railway as a public highway and common carrier. (2)   By reason of the ownership of the stock of the coal mining companies and the elevator company, and the conduct of the business of each of these companies by the Missouri Pacific Railway Company, the autonomy, integrity, independence and individuality of each of said companies was thereby destroyed; they thereby ceased to be a corporation in that they were no longer an aggregation of individuals; they were thereby rendered incapable of discharging their duties to the public and the State; all contrary to the Constitution, laws and public policy of the State.   A corporation, and particularly a railroad corporation, has no right to own the stock of another corporation, unless that right is specially conferred by statute.   1 Morawetz on Corporations, par. 227; Taylor on Corporations, par. 49; Matthews v. Skinker, 62 Mo. 329; State ex inf. v. Trust Co., 144 Mo. 562; Railroad v. Canal Commissioners, 21 Pa. St. 589.   (3)   The railway company was guilty of a usurpation of a franchise not conferred upon it by the State in owning the stock and carrying on the business of the other three respondents.   Noyes on Incorporate Relations, par. 294; Jessup v. Railroad, 76 Fed. 741; Hirschel on Corporations, p. 86; Stone v. Rottman, 183 Mo. 552; Newland Hotel Co. v. Lowe, 73 Mo. App. 135; City of Goodland v. Bank, 74 Mo. App. 367; Ollesheimer v. Thompson Mfg. Co., 44 Mo. App. 185; State ex rel. v. People's United States Bank, 197 Mo.

600. (4) The right to own stock in another corporation does not confer a right to control its business. Spelling on Corporations, sec. 172; Taylor on Corporations, sec. 267; Brice on Ultra Vires, 133; Pearson v. Convord R. R. Corp. 62 N. H. 537; Railroad v. Iron Co., 46 Ohio St. 44; Railroad v. Railroad, 31 N. J. Eq. 475; Denny Hotel Co. v. Schram, 6 Wash. 134; Hazelhurst v. Savahhan R. R. Co., 43 Ga. 57; People v. Chicago Gas Co., 130 Ill. 268; Franklin Co. v. Lewiston Inst. for Savings, 68 Me. 43; Insurance Co. v. Harbor Protection Co., 37 La. Ann. 233; Lagrone v. Zimmerman, 46 S. C. 372; Pauly v. Coronado Beach Co., 56 Fed. 428; Lumber Co. v. Rees, 103 Ala. 627. (5) The ownership of the stock and the conduct of the business of the elevator company by the railway company was also a usurpation. Memphis Grain & Elevator Co. v. Railroad, 85 Tenn. 703; In re New York Central R. R. Co., 77 N. Y. 248; Railroad v. Warren, 16 Ill. 502. The coal companies and the elevator company have, by reason of the ownership of their stock and the doing of their business by the railroad company, ceased to have the power to maintain a legal existence as a corporation, and no longer conduct, or are able to conduct, the business that they were authorized by the State to transact. People v. North River Refining Company, 121 N. Y. 696; State ex rel. v. Equitable Loan and Investment Co., 142 Mo. 320.

*Alexander G. Cochran, Martin L. Clardy* and *R. T. Railey* for respondents.

(1) Corporations have not only the powers expressly granted to them, but those which are necessarily implied. While it is true they derive all their power from the Legislature which creates them, it is also true that what is fairly implied is as certainly granted as what is expressed. In other words, no

corporation can be invested with the right to go into
the business for which it has been incorporated with-
out carrying with it an implied right to do things, and
perform acts in connection with its carrying out of
the purposes for which it is incorporated; that, unless
restrained by their charters or the law of the State,
they have the power to deal precisely, in carrying out
their corporate purposes, as individuals seeking to
accomplish the same ends; that they may resort to
any means that would be necessary and proper for
an individual in executing the same, unless they be
prohibited by the terms of their charters or some
public law from so doing; that while in regard to their
express powers, the grants are construed most lib-
erally in favor of the State, and most strictly against
the corporation, yet, in regard to incidental powers,
neither strict nor liberal, but only reasonable rules
of construction are applied; that corporations may
even so far develop and extend their operations as
to engage in matters not primarily contemplated by
their founders, provided such matters be fairly within
their scope, and that, in so developing and extending
their undertakings they employ direct, and not in-
direct means; that "necessary", when used in defin-
ing the powers of corporations, does not mean simply
what is indispensable, but also what is useful, con-
venient and proper to carry into effect the franchises
granted.    Greene's Bryce on Ultra Vires, pp. 66-91;
Ellerman v. Stock Yards Co., 49 N. J. Eq. 217; 2 Cook
Stock. and Corp. Law, sec. 681; Malone v. Lancaster
Gas Light & Fuel Co., 37 Atl. 932; 23 Am. and Eng.
Ency. Law, 680; Jacksonville Ry. & Nav. Co. v.
Hooper, 160 U. S. 514; Railroad v. Union Co., 107
U. S. 98; Todd v. Union Land Co., 57 Fed. 47; 2 Pur-
dy's Beach on Priv. Corp., pp. 12-28-29; Endlich on
Interpretation of Statutes, sec. 418; Ft. Worth City
Co. v. Smith Bridge Co., 151 U. S. 294; Pennsylvania
Co. v. Bridge Co., 131 U. S. 371; Brewing Co. v.

Fraatz, 123 Ill. App. 26; 1 Elliott on Railroads, sec. 38; 1 Wood's Railway Law, sec. 169; 1 Spellman on Priv. Corp., secs. 68, 73 and 75; Western Boatman's Benev. Ass'n v. Kribben, 48 Mo. 37. (2) Thus, a railroad company may own elevators, or stock in elevator companies, or acquire coal mines or stock therein, as incidental to the operation of its lines of road, and to enable it to serve the public the better. Railroad v. Nebraska, 164 U. S. 403; Railroad v. Wathem, 17 Ill. App. 582; In re Application New York Central, 77 N. Y. 248; Railroad v. Kipp, 46 N. Y. 546; Railroad v. Mckissock, 140 U. S. 304.

VALLIANT, C. J.—The information is in *quo warranto*. The respondents are Missouri corporations; the business for which each was incorporated is indicated by its corporate name, a railroad company, two coal mining companies, and an elevator company.

The charge in the information is that the railroad company has acquired the capital stock of the three other corporations and is engaged in conducting the business for which they were incorporated. More specifically stated, the charge is that the Western Coal & Mining Company was organized under the laws of this State in 1879, with a capital stock of $500,000, for the purpose of carrying on a general coal and mining business in Missouri, Kansas and elsewhere, with power to purchase, lease or otherwise acquire mineral and other lands for the purpose of mining coal and other minerals, buying and selling coal, etc., and owning and operating machinery and appurtenances necessary to carry on that business; and that after its organization the corporation entered upon the business for which it was chartered and continued to conduct the same until the acquisition of its capital stock by the Missouri Pacific Railway Company, whereupon it ceased to perform its

functions and the business has since and is still being conducted alone by the railroad company, to the injury of the interests and welfare of the people of the State.

Like specifications are made in relation to the Rich Hill Coal Mining Company, and, varying only in reference to the character of the business, relating also to the Kansas-Missouri Elevator Company. The conclusion from those facts drawn in the information is that the two coal companies and the elevator company have lost their integrity and individuality and are rendered incapable of exercising the franchises granted by their respective charters, that each had become a mere cover for the unlawful exercise of power by the railroad company, and their further existence is of injury to the people of the State.

The prayer is that the two coal companies and the elevator company be ousted of their charters, that the railroad company be ordered to cease operating the business of those three companies, and failing to heed such order, that it be ousted of the corporate rights granted by its charter.

The respondents filed a joint answer to the following effect: They admit the origination of each of the corporations as stated in the information and the purpose for which it was organized, and they admit that a majority of the capital stock of the three other companies is owned by a trustee who holds the legal title thereto for the use and benefit of the railroad company, but aver that there are four other persons who each own at least one share of the stock. Referring to the averment in the information to the effect that the railroad company holds its charter from the State and has only the powers granted to it as a railroad company by the laws of the State, which are only such powers as are necessary, convenient and incident to the construction, maintenance and

operation of a railroad as a public highway, and that under the Constitution it can engage in no business other than that expressly authorized by the charter or the law under which it may have been organized, the answer avers that the railroad company has offended in no respect the provisions of the law referred to and has not gone beyond the lawful power conferred by its charter; that the acquiring of the stock in the coal companies was for the purpose only of securing for its use in operating its railroad the necessary supply of coal for fuel, and the acquiring of the stock in the elevator was to facilitate the shipping and transportation of grain over the railroad. They deny that since the acquisition of the stock by the railroad company the coal companies and the elevator company have ceased to do business under their respective charters or that such business is or has been conducted by the railroad company; on the contrary, they aver that since the acquisition of the stock, as before, the business of the coal companies and the elevator company have been conducted exclusively by their respective boards of directors duly elected by the stockholders. They deny that there has been any abuse of their charter powers or any conduct on the part of the directors injurious to the interest or welfare of the people of the State, or that the interests or welfare of the people would be promoted by a dissolution of the corporations named or a forfeiture by the railroad company of its beneficial interest in the stock of the other companies.

To that answer the Attorney-General filed a reply in which, after denying that any persons other than the trustee for the railroad company owned any of the stock and denying that the stock was acquired for the purposes stated in the answer, went on to aver that, since the acquisition of the stock in the coal companies, the railroad company "through the management, conduct and control of the said coal

companies, engaged in the business of selling coal to the general public and did sell large amounts through and under the name of said coal and mining companies to the general public in Missouri and elsewhere." An averment of like character was made in reference to the business of the elevator company. These averments differ from those in the information in this, to wit: in the information it was stated that the railroad company itself was, under cover of the charters of these other companies, carrying on the business of mining and marketing coal and a general warehouse and elevator business, whereas the averments in the reply are that the railroad company was doing those acts through the management of the coal and elevator companies, by virtue of its ownership of the stock in those companies. On motion of the respondents the court struck out those averments in the reply, construing them to be the pleader's inference from the fact of the ownership of the stock, and since the ownership of the stock was admitted in the answer, or return, the inference to be drawn was but a legal conclusion.

The State then moved for judgment on the pleadings and that is the form in which the cause is now submitted for final judgment.

For the purposes of this motion the statements in the answer (or return) of respondents must be taken as true, and the statements in the information admitted by the answer will also be taken as true; the legal conclusions that either party draws from those facts are open for discussion.

The organization of the corporations as stated in the information, and the several purposes for which they were respectively organized, are admitted, and it is also admitted that the majority of the stock in the coal companies and in the elevator company is held by a trustee for the railroad company.

The language of the answer perhaps justifies the inference also that all the stock in those companies except four shares in each is held by a trustee for the railroad company, and that those four shares are held by individuals to enable them to qualify as directors as the law requires. Against those admissions we have the statements in the answer that the purpose of the railroad company in acquiring the stock in the coal companies was to secure to itself a supply of coal to be used as fuel in running its trains, and the purpose in acquiring the stock in the elevator company was to facilitate the handling and shipping of grain to be carried over its road; also the statements that the railroad company does not operate or control the operation of either of the coal companies or the elevator company, but on the contrary each is controlled and operated by its own board of directors and officers appointed by the board, and that each company is performing the duties required by its charter and serving the public impartially as the law requires. Those statements must be taken as true with only this qualification, to-wit, the law presumes that the railroad company has exerted its power as a stockholder in electing the directors and to that extent influences the policy of each company.

Under the state of facts above mentioned the only question of law in this case is, may a railroad company own the majority of stock in a coal company adjoining or near its line of road, or in an elevator company offering a convenient means to aid it in the handling and shipping of grain? The question is not, can a railroad company be held to account in a proceeding in *quo warranto* for an abuse of the power which the ownership of a majority of such stock gives? for perhaps no one would doubt that it would be amenable to such an inquiry, but where there has been no abuse of power, where the business of the corporation is being conducted in the usual way of such

business concerns, is it unlawful for the railroad company to own the stock?

The only written law to which we are referred as sustaining the contention that it is unlawful for a railroad company to own stock under such conditions is section 7 of article 12 of the Constitution, in which is the following: "No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized." That clause in the Constitution does not refer to the ownership of stock in another company; the thing forbidden is the engaging in business not authorized by its charter. It would doubtless be a violation of that clause of the Constitution if a railroad corporation should acquire and use the stock of another corporation in whose business a railroad company could not lawfully engage, as a cover behind which to carry on such business, that is, as a mere means of evading the letter of the law, still, in such case, the offense would be the carrying on of the business, not the owning of the stock.

It would perhaps not be contended that a railroad company could not lawfully own a coal mine and operate it if necessary for the sole purpose of obtaining fuel for its own use, or that it could not own and operate an elevator in the handling of grain to be transported over its railroad. The business therefore of mining coal or operating an elevator is not business of such a character as the clause in the Constitution above quoted forbids. If the railroad company could do that business with its own means, why could it not secure itself in the matter of obtaining coal for fuel or a convenience in handling grain by acquiring stock in a coal or elevator company, if it would be more convenient, and if the public was not injured thereby? The more stock a corporation owns in another concern the more power it has in the elec-

tion of directors and through them in influencing the policy of the other corporations, but that is not in fact taking the management of the business in its own hands. We are not overlooking the fact that where a corporation owns practically all the stock in another concern it may, if so minded, dictate through the board of directors the method of the business, which would be equivalent to indirectly conducting the business; but that consequence does not necessarily follow; the directors may be chosen with an eye to their ability and honesty and left to conduct the business according to their best judgment, and the law will presume that such is the case until the contrary is shown; if it should be shown that directors are conducting the business in the interest alone of a stockholder who elected them and to the injury of the other stockholders or to that of the public in general, a case of fraudulent mismanagement would appear, calling for the arm of a court of equity; but such is not this case. We therefore conclude that section 7 of article 12 of the Constitution does not forbid a railroad company to own stock in a coal company or an elevator company, and we hold that the mere fact that the railroad company does own a majority or all but a few shares of the stock in those companies, does not authorize a judgment of dissolution of the corporations and ouster of their franchises.

It is charged in the information that the charters of the coal companies and the elevator company have become a mere cover for the railroad company under which to hide its unlawful usurpation of the corporate franchises, that those companies by such unlawful usurpation by the railroad company have been rendered incapable of conducting their business, and that their businesses are being conducted by the railroad company. But those statements are denied in the answer of respondents. It is there stated that

the business of each of those companies is and has been from the beginning conducted under the direction and control of its own board of directors. Those statements are to be taken as true and, taking them as true it leaves the State's case nothing to rest on but the bare fact that the railroad company owns the majority of stock in those other companies.

There is no use for us to go further and decide whether or not a railroad company may lawfully acquire and hold any or all the capital stock of another corporation whose business has no influence in aiding it in operating its railroad, because there is no such question before us. The court will take judicial knowledge of the fact that coal for fuel is a necessity in the operation of a steam railroad and that an elevator, although not an absolute necessity, is an assistance in the handling and shipping of grain, and we hold that a railroad company may acquire stock in coal and elevator companies when the purpose is, as in this case it is, to facilitate the business for which it was chartered.

Our judgment is that the ouster demanded in the information should be denied and the respondents discharged. It is so ordered. All concur, except *Kennish, J.*, not sitting, having been of counsel.