CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1911.

---

*(Continued from Volume 240)*

---

THE STATE ex inf. HERBERT S. HADLEY, Attorney-General, v. MISSOURI PACIFIC RAILWAY COMPANY, ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, WABASH RAILROAD COMPANY, PACIFIC EXPRESS COMPANY, and AMERICAN REFRIGERATOR TRANSIT COMPANY.

In Banc, March 1, 1912.

1. **QUO WARRANTO: Motion for Judgment on Pleadings: Things Admitted and Considered.** In *quo warranto*, submitted on a motion for judgment on the pleadings, consisting of the information and return, the court, in arriving at the substantive facts pleaded and proper for consideration upon the motion, takes as true the material allegations in the information admitted by the return, and also as true the material allegations in the return, thereby leaving open for discussion the legal conclusions of either party.

2. **COMBINATION: Established by Pleading.** The mere allegation that a combination exists between two railroad companies is not sufficient to establish such combination.

Vol. 241 Mo—1          (1)

3. ————: ————: Control by Ownership of Stock. One railroad company cannot in law be said to control another where its ownership of the other's stock, if exercised, can amount to no more than the election of two of its thirteen directors. Nor can a charge of a control and combination deduced from such ownership be considered other than a conclusion of the pleader. Nor does the fact of such percentage of ownership support the conclusion, either of control or ownership.

4. RAILROADS: Ownership of Stock: Connecting Lines. The ownership of the stock of one railroad company by another connecting line does not violate the law.

5. ————: Ownership of Express and Refrigerator Companies. A railroad company may own the stock of an express company organized as a carrier of express freight, and also the stock of a refrigerator car company which owns cars devised and used for the transportation of products which require refrigeration while in transit. The railroad company could engage in such express and refrigerator transportation business itself, and what it may do directly it can do indirectly by owning the stock of the companies engaged directly in the business. But under the law, it is the duty of the railroad company to permit any express company to operate upon its lines.

6. ————: Combination: Stockholders in Several Defendant Companies: Not Before Court. An allegation in the information that certain stockholders own a majority of the stock of one of the respondent railroad companies, which in turn owns some of the stock of the other two railroad companies and of the express company and the refrigerator car company, and that such stockholders have conspired together to control all the respondents, will not justify a writ of ouster against the respondent companies, where such individual stockholders are not made parties, and therefore are not before the court.

## Quo Warranto.

WRIT DENIED.

*Herbert S. Hadley*, Attorney-General, and *John Kennish*, Assistant Attorney-General for the State; *F. W. Lehmann* of counsel.

(1) It is stated by the respondents in their demurrer that the facts stated in the information constitute a cause of action against the respondents sev-

erally, but not jointly with any other respondent. That involves a consideration of the question as to what it is necessary to allege against several respondents when the charge is that they have conspired to do acts which are unlawful. The sufficiency of the pleading in this regard must be determined by the rules in reference to civil proceedings. 2 Spelling on Extraordinary Legal Remedies; People v. Railroad, 1 Lans. (N. Y.) 308; Commonwealth v. Bank, 28 Pa. St. 391; State v. Anderson, 8 So. (Fla.) 1; State v. Bank, 10 Ohio, 535; State v. Hardie, 1 Ired. (N. C.) 42; State v. Kupferle, 44 Mo. 154; Bishop v. State, 149 Ind. 223. While the rules of pleading in civil cases have been applied to proceedings in *quo warranto,* yet it is not necessary that there should be stated in the information in detail the acts constituting the usurpations charged. It is only necessary that the respondent should be informed by the information of the franchises alleged to be usurped in terms of sufficient definiteness so that they can properly disclaim or justify. 17 Ency. Pl. & Pr. 458; Palmer v. Woodbury, 14 Cal. 43; People v. Railroad, 12 Mich. 398; People v. Insurance Co., 15 Johns. 358; People v. Turnpike Railroad, 23 Wend. 193; People v. Niagara Bank, 6 Cow. 196; Commonwealth v. Bank, 28 Pa. St. 391; People v. Dashaway Association, 84 Cal. 119; Territory v. Railroad, 2 Mont. 109; Commonwealth v. Sturtevant, 182 Pa. 332; 2 Spelling on Extra. Leg. Rem., sec. 1851. (2) Where it is charged that a combination or conspiracy has been formed to do an unlawful act, or for an unlawful purpose, it is only necessary to charge the existence of the combination or conspiracy in general terms. 4 Ency. Pl. & Pr., p. 713; Commonwealth v. Eastman, 1 Cush. 190; State v. Parker, 43 N. H. 84; People v. Saunders, 25 Mich. 119; Hazen v. Commonwealth, 23 Pa. St. 363. And where a combination or conspiracy is for a purpose which is prohibited by statute, the purpose of the combination need be set out only in

such a manner as to show that it is within the terms of the statute. United States v. Gardner, 42 Fed. 831; Landringham v. State, 49 Ind. 186; Cole v. The People, 84 Ill. 216. (3) The law in relation to conspiracies applies to corporations as to individuals. Lubricating Oil Co. v. Standard Oil Co., 106 N. Y. 670; Lead Co. v. Paint Store Co., 80 Mo. App. 247; State ex inf. v. Insurance Co., 152 Mo. 37; State v. Standard Oil Co., 49 Oh. St. 137; People v. Refining Co., 121 N. Y. 6S6. The State to maintain a joint action against several corporations charged in an information in the nature of a *quo warranto* to have combined or conspired for the purpose of doing acts or accomplishing results unlawful or prohibited by statute is the settled practice of this court. State ex inf. v. Packing Co., 173 Mo. 356; State ex inf. v. Tobacco Co., 177 Mo. 1; State ex inf. v. Railroad, 182 Mo. 284; State ex inf. v. Standard Oil Co., 194 Mo. 124. And the right of the State to proceed against several respondents jointly in an action in *quo warranto,* if the grounds upon which the action is based are common to all, is a general rule of practice. 17 Ency. Pl. & Pr., p. 440; State v. Kern, 17 R. I. 395; Gilroy v. Commonwealth, 105 Pa. 484; State v. Simpkins, 77 Ia. 676; 2 Spelling on Extra. Leg. Rem., p. 1820; People v. Refining Co., 121 N. Y. 696. The ownership by one corporation of the stock of another, whether engaged in the same or different business, is *ultra vires.* State ex rel. v United States Bank, 197 Mo. 600; Goodland v. Bank, 74 Mo. App. 367; Hotel Co. v. Furniture Co., 73 Mo. App. 135; Ollesheimer v. Mfg. Co., 44 Mo. 185; Stone v. Rottman, 183 Mo. 552. And where one corporation owns stock in another corporation for the purpose of controlling it and accomplishing any result contrary to the Constitution or statutes of the State, such action is not only *ultra vires,* but is against public policy, and renders both corporations subject to an action of forfeiture by the State. State v. Oil Co., 49 Oh. St. 137; People v. Refining Co.,

121 N. Y. 582; McCutcheon v. Capsule Co., 71 Fed. 787; Lead Co. v. Paint Store Co., 80 Mo. App. 247; Railroad v. Kentucky, 161 U. S. 698; Railroad v. Collins, 40 Ga. 582; People v. Trust Co., 130 Ill. 268; Distilling Co. v. People, 156 Ill. 448; Milbank v. Railroad, 64 How. Pr. 29; Pearsall v. Railroad, 161 U. S. 646; State v. Distilling Co., 29 Neb. 700. (5) That it was unlawful for the Pacific and Iron Mountain Companies to own stock and bonds in the Wabash Company for any purpose, and particularly for the purpose alleged in the information; that it was unlawful for the Wabash Company to give to its debenture bonds a voting power for any purpose, and particularly for the purpose alleged in the information, and that it was unlawful for the Pacific and Iron Mountain and Wabash Companies to be under one domination and control for any purpose, and particularly for the purpose alleged in the information, is clearly established by the provisions of our Constitution and statutes, and also by the decisions of the courts. Constitution, art. 12, sec. 17; R. S. 1899, secs. 1062, 1063, 1064, 1065, 1066, 1067, 1068, 1069; Railroad v. Wear, 135 Mo. 265; Railroad Co. v. Collins, 40 Ga. 582; Hazelhurst v. Railroad, 43 Ga. 13; Railroad v. Kentucky, 161 U. S. 685; State v. Vanderbilt, 37 Oh. St. 590; Pearsall v. Railroad, 161 U. S. 671; Thomas v. Railroad, 101 U. S. 71; Trans. Co. v. Pullman Co., 139 U. S. 24; Railroad v. Commonwealth, 7 Atl. 368; Railroad v. Commonwealth, 7 Atl. 374; Milbank v. Railroad, 64 How. Pr. 20; Pearson v. Railroad, 62 N. H. 537; State v. McDaniel, 22 Oh. St. 368; Railroad Co. v. Wood, 88 Ala. 630; George v. Railroad, 101 Ala. 607; United States v. Securities Co., 120 Fed. 721, 193 U. S. 197; Clarke v. Railroad, 50 Fed. 338.

*M. L. Clardy, Robt. T. Railey* and *J. L. Minnis* for respondent.

The railroad companies may own the cars of a refrigerator company or may lease them. If they can better secure the use of the cars and make their operation effective through the instrumentality of an auxiliary company, may they not do so? R. S. 1899, secs. 971, 1035 and 1081. (2) The thing against which the provision of the Constitution and that of the statute are leveled—the specific thing which is forbidden—is a control by one competing line of another competing line of railroad. To violate the law there must be control, and there can be no control of one corporation by another through ownership of capital stock unless such ownership shall involve a majority interest in such capital stock. There is no explanation in the information as to how, if at all, one-sixth of the stock of the Wabash Company controls it, although the general allegation of control is conspicuous throughout the entire information. State v. Railroad, 8 Am. St. 880; State v. Crawfordsville, etc., Tp. Co., 102 Ind. 283; Smelser v. Wayne Tp. Co., 82 Ind. 417; State v. Turnpike Co., 92 Ind. 42; Moore v. State, 71 Ind. 478.

FERRISS, J.—Information in *quo warranto* to oust respondents of their franchises. The case is submitted on a motion for judgment on the pleadings, which consist of the information and the returns or answers of the several respondents.

In arriving at the substantive facts pleaded, and proper for consideration upon this motion, we take as true the material allegations in the information admitted by the answers, and also as true the material allegations in the answers or returns of respondents, leaving open for discussion the legal conclusions of either party. [State ex rel. v. Mo. Pac. Ry. Co., 237 Mo. 338.] Thus considered, the pleadings show the facts as follows:

The three respondent railway companies are Missouri corporations. Both the Missouri Pacific Railway Company (hereinafter called the Pacific Company) and the Wabash Railroad Company (hereinafter called the Wabash Company) own and operate lines of railroad between St. Louis and Kansas City, Missouri; that of the Pacific Company being 283 miles in length, and that of the Wabash Company, 276.5 miles; said roads running west on opposite sides of the Missouri river from St. Charles, twenty-three miles from St. Louis. The Consolidated Wabash Railroad Co., existing under the laws of Ohio, Missouri, Illinois, Indiana and Michigan, owned and operated during the time and events mentioned herein lines of railroad extending from St. Louis east to Toledo, O., Buffalo, N. Y., Pittsburg, Pa., and Chicago, Ill., aggregating 1699.2 miles, forming continuous lines with the Pacific Company railway.

The St. Louis, Iron Mountain & Southern Railway Company (hereinafter called the Iron Mountain Company) owns and operates a railroad from the city of St. Louis, south, to the southern line of the State, and beyond, forming a continuous line with the Pacific road to and through the State of Arkansas, but said companies are not consolidated.

The respondent American Refrigerator Transit Company (hereinafter called the Refrigerator Company) is an Illinois corporation. It owns cars devised and used for the transportation of products which require refrigeration while in transit, is not a carrier or shipper of freight, and does not contract for carriage of freight. It is not a common carrier, but engages only in the business of leasing its cars to various railway companies, and equipping such cars with ice.

The Pacific Express Company is a Nebraska corporation, conducting the business of carrying express freight as a common carrier over the lines of respondent railroads, and is the only company conducting said

business upon said lines; but said respondent railway companies have not refused to allow other express companies to conduct business over their lines.

The Pacific Company owns a majority of the capital stock of the Iron Mountain Company, and the two companies have their principal officers in common.

The Wabash Company has 331,110 shares of common stock and 140,000 shares of preferred stock, each of the par value of $100. The company has also outstanding $30,000,000 of debenture bonds. The holders of the debenture bonds elect six directors, the stockholders elect six directors, and the twelve so elected select the thirteenth director to complete the board.

The Pacific Company owns 20,000 shares of Wabash stock. The Iron Mountain Company owns 65,000 shares of Wabash stock, and $5,435,000 of Wabash debenture bonds. These debenture bonds were acquired by the Iron Mountain Company originally from the Wabash Company in February, 1890, in lieu of the same number of collateral trust bonds acquired by the Iron Mountain Company from the Wabash, St. Louis and Pacific Railway Company, in December, 1883.

The Iron Mountain Company purchased in the market, in 1903, at the market price, 85,000 shares of Wabash stock, the Wabash Company at that time operating a continuous line east to Toledo, Buffalo, Pittsburg and Chicago, connecting with the Iron Mountain railway at St. Louis.

The Express Company has 60,000 shares of capital stock, each of $100 par value. Of this stock the Wabash Company owns 24,000 shares, and the Pacific Company, 12,000 shares.

The Refrigerator Company has 5000 shares of capital stock, of $100 par value each. Of this capital stock the Pacific Company owns 1217 shares, the Iron Mountain Company, 2,853 shares, and the Wabash Company, 930 shares, making the total 5000 shares.

The information charges that George J. Gould and Frank J. Gould own a large number of shares of the Pacific Company, and have combined and conspired with other stockholders of said company to control and manage the affairs of said company, and, through ownership by the Pacific Company of the majority of the stock of the Iron Mountain Company, to also control the latter company; that the said stockholders of the Pacific Company own and control a large number of shares and bonds of the Wabash Company, and have caused the two first-mentioned companies to own and hold a large number of shares and bonds of the Wabash Company, as stated above, and this as a result of and in furtherance of a conspiracy on the part of such stockholders to bring under one control the Wabash and Pacific Companies, and destroy competition, and also to consolidate the stock, property and franchises of the Wabash and Pacific Companies, which are alleged to be competing and parallel lines, so that they will be one company in effect, so far as public interests are concerned. It is further charged that this result has been accomplished by the means aforesaid.

It is further charged that the aforesaid ownership of stock and bonds of the Wabash Company by the other companies is unlawful, and is a usurpation of franchises not granted by law; also that the aforesaid ownership of stock in the Express and Refrigerator Companies is a usurpation of franchises and rights not granted by law, and that its effect is to render such Express and Refrigerator Companies incapable of exercising their respective rights and franchises.

It is further charged, in conclusion, that all the foregoing alleged unlawful acts have been done by the respondent corporations, their officers and members, in furtherance of and as part of an unlawful conspiracy between the respondents, their officers and members, to destroy all competition between said railway companies, and to destroy all competition between said

Express and Refrigerator Companies and other express and refrigerator companies on the lines of said railway companies, to conduct all traffic over the lines of said railways, including the express and refrigerator business, under one and the same control, and to effect a combination of parallel and competing lines, "to the great injury of the people of the State of Missouri."

The information concludes with the following prayer:

"Wherefore, the Attorney-General, who prosecutes in this behalf for the State of Missouri, prays the consideration of the court in the premises, and that the respondents, the Pacific Express Company and the American Refrigerator Transit Company, be ousted of their franchises, privileges and license to do business in the State of Missouri, and that the same be declared forfeited, and that the respondents, The Missouri Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company and the Wabash Railway Company, be ousted of the liberties, franchises, privileges and powers so usurped and unlawfully exercised by them, and each of them, as hereinbefore set forth, and that the court further order, adjudge and decree that the said respondents, the Wabash Railroad Company, the Missouri Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company, discontinue and cease the usurpations hereinbefore set forth, within a definite time, and that failing so to do, all the rights, privileges and franchises of said Wabash Railroad Company, Missouri Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company be declared forfeited."

So far as the Express and Refrigerator Companies are concerned, it is not charged in the information that either company, as such, has done anything in violation of its duties and obligations. The only

allegation against these companies is that, in the one case, a majority of the stock, and in the other, the entire stock, is owned by the three respondent railway companies. As to how or when this stock was acquired there is no allegation. There is no complaint that either company is not performing its full duty to the public. There is no allegation of fact tending to show that either company has in any way conspired or confederated with the railroad companies for any purpose whatever; nor does it appear from any allegation in the information that either company is not managed by its own board of directors and in a proper way.

The substantive facts with which we have to deal (laying aside mere conclusions and immaterial and irrelevant allegations), as we glean them from the pleadings, are few in number.

I. The information charges that the Pacific Company, through its ownership of Wabash stock, and through the ownership of Wabash stock and bonds by the Iron Mountain Company, completely controls and dominates the Wabash Company, and has effected a combination and consolidation of the stock, property and franchises of said companies. No further facts being pleaded to support this allegation of combination and control, it must rest solely upon the fact that the Pacific and Iron Mountain Companies own the stock and bonds above set forth. It is obvious, however, that such ownership is far from amounting to control. If such ownership were exercised in combination, it could not amount to the election of more than two of the thirteen directors of the Wabash Company. There is no allegation that the ownership has been so exercised. The mere allegation that there is a combination and control is not sufficient, under our decision in the case of State ex rel. v. Missouri Pac. Ry. Co., supra. We have before us a conclusion of

the pleader, based upon the facts above stated, which facts, as pleaded, do not in our judgment support the conclusion.

It appears from the facts that the Wabash is a connecting line with the Iron Mountain, and therefore the ownership of stock in the former company by the latter does not violate the law.

It is contended by the respondents that inasmuch as the Wabash owns connecting lines from Pittsburg, Toledo and Chicago through to Kansas City, that portion of the line between St. Louis and Kansas City is not a parallel and competing line in the sense in which these terms are used in the statute. We need not decide whether this contention is true. It is obvious that the Pacific Company, owning 20,000 shares of stock in the Wabash, cannot, by reason of such ownership, in any sense control the Wabash Company. Nothing appearing to the contrary, presumptively the Wabash has its own officers and its own board of directors, and it is further to be presumed that such officers and board of directors are performing their duties as such.

II. It is claimed that the railway companies, by their ownership of the capital stock of the Express Company and Refrigerator Company, have usurped the rights and franchises of the latter companies—have violated the law by the ownership of stock in other corporations. Similar questions were presented in the case of State ex rel. v. Missouri Pac. Ry. Co., supra, wherein a similar charge was made against the Pacific Company because of its ownership of stock in a coal company and elevator company. We held in that case that, inasmuch as a railroad company could lawfully engage in mining coal for its own use, and could operate an elevator to handle grain for transportation over its railroad, the railroad company might lawfully own a majority of the stock of such companies. What is there said applies equally well

to both the Express Company and Refrigerator Company in this case. Both companies are engaged in business which the railroad company could carry on itself; and if it could do so directly it may do so indirectly by owning the stock of the companies engaged directly in the business. From the facts stated it does not appear that the ownership of stock in these companies forbids competition in either the express or refrigerator business. Under the law, it would be the duty of the railroad company to permit any express company to operate on its lines, and, under the facts stated, the railroad companies in this case have not refused such right to any other company. It will not be questioned that the railroad companies can own refrigerator cars, and, for reasons stated above, they may own them indirectly through ownership of stock in the company which owns and leases them.

We are unable to find, under the substantive facts alleged in this case, that there is a combination or conspiracy among the respondent railroads to control the entire traffic over their roads, or that the railroad companies have usurped the rights and franchises of the Express and Refrigerator Companies.

III. The State argues that we should disregard the corporate forms, and look to the Goulds and other stockholders of the Pacific Company, who, it is alleged, own a majority of the shares of the Pacific Company, and who, it is further charged, have conspired together to control all the respondents, and to cause to be done all the things complained of herein, and that through such stock ownership, and in pursuance of such conspiracy, these individuals have caused these corporations to do these things. It is sufficient to say that these individuals are not before the court. We have the corporations only. We do not find them guilty of offending the law in the manner charged. We, therefore, give judgment for respondents. All concur, except *Brown, J.,* who dissents; *Kennish, J.,* not sitting.