E. R. DARLINGTON LUMBER COMPANY, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY.

Division One, May 31, 1912.

1. **RAILROAD SWITCHING CHARGES:** Long-and-Short Haul Statute: Different Companies. The Long-and-Short Haul Railroad statute (Sec. 3173, R. S. 1909) applies only where the long and short hauls are made over the same road. If the short connecting track belongs to a different company, the

statute does not prohibit a separate charge for the haul over that track. And a company duly organized and incorporated under the laws of the State is a different company, though its officers are made up of officers of the other two companies which mainly or solely use its short track.

2. ————: ————: ————: **Taylor City Belt Line: World's Fair.** The Taylor City Belt Railroad Company was duly organized and incorporated under the laws of Missouri, and its officers were the officers of the Missouri Pacific Railway and the St. Louis & San Francisco Railroad companies. It constructed a track something over a mile long, running north and south, and connecting between the two lines of railway, and used by each of those companies for delivering cars to the World's Fair grounds. *Held*, that it was a separate road, and that its track could not be considered a switch of the Missouri Pacific Railway Company, nor does the Long-and-Short Haul statute compel the Missouri Pacific to refund to a shipper all sums in excess of three dollars per car charged for shipping cars over this short track to the World's Fair grounds.

3. ————: ————: **Complaint by Another: Insufficient.** The Long-and-Short Haul Railroad statute prescribes heavy penalties against all railroad companies violating it, and is highly penal, and must be strictly pursued; and a complaint, made before the Board of Railroad and Warehouse Commissioners, that a railroad company has violated its provisions in reference to switching charges, is to be determined upon evidence heard, and one shipper cannot make the complaint for another shipper. A complaint made by the St. Louis Lumberman's Association (a voluntary association) of excessive charges by a railroad company on lumber shipped by lumbermen, including the E. R. Darlington Lumber Company, furnishes no proper basis for an order by the Board of Railroad and Warehouse Commissioners fixing a switching rate; and such an order, on such a complaint, gives to said E. R. Darlington Lumber Company no legal standing in the court in a suit for the recovery of the money which said order directed the railroad company to refund to the members of said association as an excessive charge.

4. **POWER TO SUE: Voluntary Association.** A voluntary unincorporated association of lumber companies has no power to sue, either in its own behalf, or for the use and benefit of its members.

5. **PRACTICE: Prima Facie Case for Plaintiff: Peremptory Instruction for Defendant.** Ordinarily where plaintiff makes out a prima facie case, it is error to give a peremptory instruction declaring he cannot recover. But if the evidence in rebuttal

243 Sup.—15

to his case is in writing, or matter of record,, and stands undisputed, and completely overcomes and destroys the prima facie case made for plaintiff, then it is perfectly proper for the court to declare the legal effect of said writing or record, by declaring, as a matter of law, that plaintiff is not entitled to recover, notwithstanding the prima facie case previously made by his evidence.

6. **RAILROAD SWITCHING CHARGE:** Long-and-Short Haul Statute: Reasonable Charge: No Legal Complaint. The circuit court cannot declare what is a reasonable and proper switching charge, if the proceeding before the Board of Railroad and Warehouse Commissioners which undertook to establish a proper charge, was not instituted upon a legal complaint by plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*George V. Reynolds* and *J. J. Howard* for appellant.

The court erred in giving defendant's instruction, which was in the nature of a demurrer, at the close of all the evidence, and after arguments and submission of briefs and the taking of them under advisement by the court, for the following reasons:    (1) The testimony of the plaintiff, together with the finding and order of the Board of Railroad and Warehouse Commissioners, made a case of an unlawful, unreasonable and unjust charge for switching, which was made and collected by the defendant, which was not overcome by the defendant's testimony.    Sec. 1126, R. S. 1899; sec. 3173, R. S. 1909.    (2) The introduction by the plaintiff in evidence of the order of the Board of Railroad and Warehouse Commissioners made a prima facie case for plaintiff, which was not overcome by defendant.    Sec. 1152, R. S. 1899; sec. 3203, R. S. 1909; Ross v. Railroad, 111 Mo. 18.    (3) Even though the court might have found (although this does not appear in and by the judgment of the

court) that the three dollar rate established by the finding and order of the Board of Railroad and Warehouse Commissioners was not a proper rate, nevertheless it was error for the court to decide that plaintiff could not recover. The court should have declared what would be a proper rate. Sec. 1150, R. S. 1899; sec. 3201, R. S. 1909; sec. 1151, R. S. 1899; sec. 3202, R. S. 1909. (4) The court erred in permitting defendant's witnesses to testify, over the objection of plaintiff, as to the cost of construction, profit or loss of the operation of the Taylor City Belt Railroad, and as to the so-called rush nature of the World's Fair shipments. Under Sec. 1126, R. S. 1899, now Sec. 3173, R. S. 1909, these matters were all immaterial and irrelevant. McGrew v. Railroad, 177 Mo. 533. (5) The plaintiff's evidence showed a clear case of willful disobedience to the order and finding of the Board of Railroad and Warehouse Commissioners by the defendant, and the court should have found for the plaintiff. Sec. 1150, R. S. 1899; sec. 3201, R. S. 1909; sec. 1140, R. S. 1899; sec. 3191, R. S. 1909.

*R. T. Railey* and *J. F. Green* for respondent.

(1) Where a trial is had before the court, an appellate tribunal will not weigh the evidence, but will defer to the trial court's finding. Hamilton v. Boggess, 63 Mo. 251; Bond Co. v. Houck, 213 Mo. 426; Assn. v. Grocer Co., 129 Mo. App. 135; Glade v. Ford, 131 Mo. App. 169; Jordan v. Davis, 172 Mo. 608. (2) Even in equity cases, it is the duty of appellant to present the entire evidence to this court, where it desires a review of the court's finding and judgment. State ex rel. v. Jarrott, 183 Mo. 217; Guinan v. Donnell, 201 Mo. 209. (3) The judgment of the circuit court was correct on the evidence submitted. Coal Co. v. Mining Co., 161 Mo. 305; Pullman Co. v. Railroad, 115 U. S. 596; State ex rel. v. Railroad, 141 S. W. 643;

Alling v. Railroad, 99 U. S. 479; Smyth v. Railroad, 169 U. S. 546. (4) The judgment being for the right party, it is immaterial on which theory the decision was made. Sloop v. Railroad, 200 Mo. 198; Gardner v. Robertson, 208 Mo. 605; Broderick v. Andrews, 135 Mo. App. 63; Vandiver v. Robertson, 125 Mo. App. 314. (5) The time originally granted for filing the bill of exceptions having expired when the order of December 23, 1907, was made, such order extending the time was invalid even by consent. Dorman v. Coon, 119 Mo. 68; State v. Stanley, 221 Mo. 547; State v. Paul, 203 Mo. 686; State v. Culbreth, 203 Mo. 579; Fulkerson v. Murdock, 123 Mo. 298; Powell v. Sherwood, 162 Mo. 611; Doolittle v. Ward, 135 Mo. App. 616.

WOODSON, J.—This suit was instituted by the plaintiff against the defendant on account of the latter's failure to obey an alleged order of the Board of Railroad and Warehouse Commissioners, to compel the defendant to refund to the plaintiff the sum of $1030.43, and for treble that sum for the failure of the railroad to pay said sum.

The petition in substance states that:

On or about February 16, 1904, the St. Louis Lumbermen's Association (a voluntary association) made complaint against the defendant to the Board of Railroad and Warehouse Commissioners regarding switching charges alleged to have been excessive, made and collected by the defendant and other railroad companies, on lumber consigned by shippers to consignees, the plaintiff included, within the enclosure of the Louisiana Purchase Exposition Company, at and near the city of St. Louis.

That said complaint was made by the St. Louis Lumberman's Association, at the instigation of and on behalf of the plaintiff, and that the decision of said

board, presently to be copied, was made for and on it behalf.

That the excessive charges made against the plaintiff, were charges of ten dollars per car, which were made and collected in addition to the regular freight charges made and collected by the defendant on each car of lumber so shipped. That said board found that said ten dollars charge as a switching fee was "unfair, excessive, unjust, unreasonable and unlawful."

That the road of the Taylor City Belt Railroad Company, which will be more particularly noticed later, was built and owned by the defendant and the St. Louis & San Francisco Railroad companies; and that it was operated in severalty by each of said companies so that freight delivered to it through either of them was carried over it by that one of them which handled it in St. Louis, by means of that particular road's own servants, employees, train crews, as well as by that particular road's engines and cars, or by the engines and cars under its control. That in truth and in fact, the Taylor City Belt Line was nothing but a switch constructed and operated in order to enable those two roads to reach the grounds of the World's Fair. That the defendant advertised that it connected with the World's Fair Grounds, and that plaintiff acted and relied upon such representations and shipped its goods by defendant's line. That said Taylor City Belt line was managed and controlled by the officers of the Missouri Pacific and the St. Louis & San Francisco Railroad companies. That the Taylor City Company owned no rolling stock of its own.

The defendant was duly served with notice of said complaint and was by said board notified of the time and place of hearing the same. The defendant appeared, was represented by counsel and introduced evidence at the hearing.

The Board of Railroad and Warehouse Commissioners, having heard the testimony produced by the

respective parties, as well as arguments by counsel, took the matter of the complaint under advisement, and, after having duly considered it, on the 13th of January rendered the following decision, and duly served copies of it on the respective parties:

STATE OF MISSOURI.
*Railroad and Warehouse Department.*
City of Jefferson, January 13, 1905.

In the Matter of the Complaint of the St. Louis Lumberman's Association Against the Missouri Pacific Railway Company, Alleging Excessive and Unreasonable Switching Charges on Shipments of Lumber to the World's Fair Grounds.

Formal hearing was held at the Commissioners' St. Louis office, in the Equitable Building.

This Commission holds, and its contention is sustained by a written opinion of Attorney-General Hadley, that the Taylor City Belt Line is a property owned by The Missouri Pacific Railway Company and the St. Louis and San Francisco Railroad Company, and that said companies should not have made a separate charge in delivering shipments to the World's Fair Grounds for the Taylor City Belt Line; that only one switching charge should be made through and to the grounds, and it is held by this Commission that a reasonable charge for the service performed in switching to the World's Fair Grounds is three dollars; and The Missouri Pacific Railway Company is hereby ordered to make refund to the complainants on the basis of a three-dollar charge for switching to the World's Fair Grounds.

By order of the Board of Railroad and Warehouse Commissioners.

(*Seal*)                                    JOE P. RICE,
                                                      Chairman.
Attest:
    T. M. BRADBURY, Secretary.

The switching charge of ten dollars a car, which was declared to be unlawful by the Railroad and Warehouse Commissioners, was made and collected from the complainant by the defendant on 147 cars handled by it, over its road in the city of St. Louis and the Taylor City Belt railroad. An itemized list of these cars is contained in complainant's "Exhibit B."

On or about the 30th of January, 1906, the complainant made demand upon The Missouri Pacific Railway Company that it comply with the order and find-

ing of the Board of Railroad and Warehouse Commissioners, and that it refund to complainant seven dollars a car on each and every car on which the unlawful switching charge of ten dollars had been made and collected by the defendant, which was on each of the 147 cars enumerated in Exhibit B. aforesaid.

The defendant, The Missouri Pacific Railway Company, failed to obey the finding and order of the Board of Railroad and Warehouse Commissioners and failed and refused to refund to complainant seven dollars a car or any part thereof, on all or any of the cars above enumerated.

Whereupon plaintiff instituted this proceeding in the circuit court of the city of St. Louis for the purpose of compelling the defendant to comply with the order of the Board of Railroad and Warehouse Commissioners, and to refund to the complainant seven dollars a car on each and every one of the cars on which The Missouri Pacific Railway Company had collected the switching charge of ten dollars.

The testimony disclosed that the Taylor City Belt Line was about 5072 feet in length; that it ran in a north-and-south direction, and intersected the main track of the Missouri Pacific Railway Company on the south and the southern boundary of the Louisiana Purchase Exposition Company's grounds on the north.

The evidence for the plaintiff showed that the free western switching limits in the city of St. Louis was a station on the Missouri Pacific Railway Company's lines known as Cheltenham. That the distance from Cheltenham west to the intersection of the Missouri Pacific Railway Company's line, by the Taylor City Belt, was about a mile; that the distance from Cheltenham to the Scullin-Gallager Iron Works was about one mile and a quarter.

The testimony developed that the switching charge ordinarily made on shipments of freight to the Scullin-Gallagher Iron Company was two dollars per car.

The testimony showed that the distance which the freight in the cars in question was hauled; namely, from Cheltenham to the World's Fair boundary, was almost the same as from Cheltenham to the Scullin-Gallagher Iron Works.

The testimony disclosed that neither the Missouri Pacific nor the Frisco reached the Louisiana Purchase Exposition grounds, and that the construction of the Taylor City Belt road was only for the purpose of enabling them so to do.

The testimony disclosed that as soon as these cars arrived the Missouri Pacific notified the complainant, the Darlington Lumber Company, that they were held subject to the payment of switching and freight charges and that before these cars would be handled by the defendant the switching and freight charges had to be paid by the complainant.

The plaintiff's testimony disclosed that of the ten dollar switching charge collected by the Missouri Pacific Railway Company from the complainant four dollars was paid to the Louisiana Purchase Exposition Company, and six dollars was retained by the Taylor City Belt Railroad and the Missouri Pacific Railway. That of this the Taylor City Belt received three dollars and the Missouri Pacific Railroad received three dollars.

The defendant railway company filed its answer in due time and was as follows:

"Now comes the Missouri Pacific Railway Company, defendant in the above-entitled cause, and for answer to the petition filed herein, says that it admits that it is a railroad corporation organized and existing and operating a railroad in the State of Missouri; and is a common carrier of goods and lumber for hire in said State, and that its line enters and runs from the city of St. Louis, Missouri; but it denies that its line of railway enters or did at any of the times mentioned in said petition, connect with, or

run within a mile of the Louisiana Purchase Exposition Company's site in said city and county of St. Louis.

"Denies that plaintiff, on the 16th day of February, 1904, or at any other time, made a complaint to the Board of Railroad and Warehouse Commissioners in the State of Missouri about excessive switching charges made and collected by this defendant on lumber consigned to plaintiff for the delivery inside of the Louisiana Purchase Exposition Company's grounds at or adjacent to the city of St. Louis.

"Denies that it and the St. Louis and San Francisco Railroad built and owned the Taylor City Belt Line, or that either of said companies operated said line of railway, or that its officers, or those of the St. Louis & San Francisco Railway Company, managed said Taylor City Belt Line; on the contrary, defendant avers that said so-called Taylor City Belt Line was built, owned and operated by a railroad company known as the Taylor City Belt Railway Company, which was duly incorporated and organized under and in accordance with the laws of the State of Missouri for the purpose of transacting the business of a common carrier of passengers and freight for hire, between a point near the Scullin-Gallagher Company's plant on the defendant's railway and the World's Fair site of the Louisiana Purchase Exposition Company in said city, a distance of about two miles.

"Denies that this defendant was duly, or in any manner, served with notice of any complaint filed by plaintiff with the Board of Railroad and Warehouse Commissioners of the State of Missouri of a hearing to be held by it on the complaint of the plaintiff.

"Denies that defendant ever appeared at any such hearing, or was represented thereat by counsel, or that any hearing was had by said Board of Railroad and Warehouse Commissioners of any such complaint.

"Denies that said Board of Railroad and Warehouse Commissioners, on the 13th day of January, 1906, or at any time, rendered any decision against this defendant wherein it was required to refund to plaintiff any switching charges paid by it to defendant for switching or hauling of cars consigned to it to the World's Fair Grounds on the basis of a three dollar charge, or otherwise.

"Denies that said Board of Railroad and Warehouse Commissioners ever made any lawful order or requirement on this defendant to refund or pay to plaintiff any switching or other charges unlawfully exacted of plaintiff by it for hauling lumber to the World's Fair site.

"Defendant admits that the Board of Railroad and Warehouse Commissioners of Missouri made the order quoted in the petition filed in this case, but denies that said order required this defendant to refund or pay to plaintiff any moneys received from it; on the contrary, said order was issued, 'in the matter of the complaint of the St. Louis Lumbermen's Association,' and the order specifically requires a refund of an unascertained and unspecified overcharge to the complainant, the St. Louis Lumbermen's Association.

"Defendant avers that no lumber was ever carried by it for said St. Louis Lumbermen's Association, nor moneys received from it for the switching or transportation of any lumber to the World's Fair Grounds, and no evidence was offered before said commissioners of any such bills or service, and that said order is therefore absolutely void and of no force and effect.

"Defendant further avers that no complaint has ever been made by plaintiff to the Board of Railroad and Warehouse Commissioners of the State of Missouri of any excessive or illegal charges made by defendant, or collected from plaintiff for switching cars to the World's Fair Grounds; and that until such com-

plaint is filed, or made against this defendant, said commission can have no jurisdiction of this defendant, or of any moneys paid to it for switching charges or otherwise, and that this court cannot have, and has no, jurisdiction of the freight rates or charges made by defendant, or collected from plaintiff, because said Board of Railroad and Warehouse Commissioners in the State of Missouri has sole and exclusive jurisdiction to determine the reasonableness of freight charges made by common carriers on freight hauled solely within the State of Missouri.

"Defendant denies that any complaint was ever made by plaintiff to the Board of Railroad and Warehouse Commissioners of the State of Missouri of the alleged overcharge on the specific carloads of lumber specified in its petition in this case, and that this court, therefore, has no jurisdiction thereover.

"Defendant admits that plaintiff paid to it ten dollars on each of the cars mentioned in its petition in this case, except the following, viz., 25833, 16727, 22408. Three dollars of which was paid to defendant for its services in switching or hauling the lumber contained in each of said cars from its connection with the carrier bringing said cars respectively into the city of St. Louis, in accordance with the regular published tariff of this defendant, which had been theretofore issued, filed with the Board of Railroad and Warehouse Commissioners of Missouri, and promulgated, as required by law, and was well known to plaintiff.

"That three dollars per car of said ten dollars was paid by plaintiff to defendant, as its agent, for the purpose of paying the freight charges that would be assessed on the lumber hauled by the Taylor City Belt Railway Company, from the junction of its railway with this defendant to the World's Fair site, in accordance with its regular published tariff which had been theretofore issued, filed with the Railroad and Warehouse Commissioners of Missouri and promul-

gated, as required by law, and was well known to plaintiff; and was paid by defendant to said Taylor City Belt Railway Company, in accordance with plaintiff's instructions.

"That four dollars per car of said ten dollars was paid by plaintiff to defendant, as its agent, for the purpose of paying a charge exacted by the Louisiana Purchase Exposition Company for the admission and handling within the grounds of said company of carload shipments of freight, in accordance with an order or rule which had theretofore been issued and promulgated by said Louisiana Purchase Exposition Company, and which was well known to plaintiff at the time all the shipments in controversy in this case moved; and that defendant, in pursuance of the instructions of plaintiff, paid said four dollars per car ı each of the cars aforesaid to the Taylor City Belt Railway Company, with instructions to pay the same to the Louisiana Purchase Exposition Company, which was done by said Taylor City Belt Railway Company.

"For further answer and defense herein, defendant denies that the three dollar charge made by and paid to it by plaintiff for hauling the lumber contained in the cars mentioned in plaintiff's petition, which it herein admits to have received, were either unfair, excessive, unjust or unreasonable, but, on the contrary, avers that such charges were wholly inadequate to compensate defendant for the service rendered by it to plaintiff in hauling its lumber to the connection with the Taylor City Belt Railway aforesaid.

"Defendant also denies that the three dollar charge paid to it by plaintiff for delivery to the Taylor City Belt Railway for hauling the lumber contained in said cars from its junction with the Missouri Pacific Railway to the World's Fair Grounds were either unfair, excessive or unreasonable, but, on the contrary, avers that said charges were wholly inade-

quate to compensate said Taylor City Belt Railway Company for the services rendered by it in hauling plaintiff's lumber from its connection with the Missouri Pacific Railway to the World's Fair site.

"Defendant further says that said charge of six dollars per car made by the defendant and the Taylor City Belt Railway Company for transporting the lumber in said cars from the point where it was received by the defendant to the World's Fair site, was the same charge which was then, and for a long time prior thereto, had been made by the Wabash Railroad Company and the St. Louis, Kansas City & Colorado Railway Company (the only two lines whose rails ran within the immediate vicinity of the World's Fair site) for the transportation of lumber and other commodities from their connections in the city of St. Louis to points on their line in the immediate vicinity of the World's Fair site, and requiring a haul of equal or lesser distance than that made by defendant aforesaid in the regular course of their business, and that all the lumber and other freight hauled by said railway companies into the World's Fair Grounds were charged the same rate that this defendant received from plaintiff for hauling its lumber aforesaid; and that said charges of said Wabash Railroad Company and St. Louis, Kansas City & Colorado Railway Company were its regular published tariff rates for hauling lumber and other freight into the World's Fair site and adjacent stations on its line during all of the World's Fair period and for years prior thereto.

"That the service rendered by the defendant in hauling plaintiff's lumber from the points where it was delivered to it by connecting carriers to its junction with the Taylor City Belt Railway, at or near the Scullin-Gallagher Iron & Steel Company, was unusual, extraordinary, special and exceptional, in that the defendant was required to haul and deliver said lumber with greater celerity than it was accustomed

to do with its ordinary traffic, on account of said lumber being intended for structures then being erected on the World's Fair site, and that said deliveries were hastened by defendant at the special instance and request of plaintiff.

"That said service was not performed in the orderly and usual course of defendant's business, but under great stress, and required a large amount of additional motive power and other equipment to handle said business with expedition, as required by plaintiff.

"That the defendant was required to, and did, expend a large sum of money in providing a connection with the Taylor City Belt Railway to facilitate the delivery of such freight to said Taylor City Belt Railway Company, and was required to, and did, construct hold or storage tracks aggregating about five thousand feet, on which cars were placed awaiting delivery to the Taylor City Belt Railway Company, which would not accept from defendant, or haul over its line, more than about five cars at a time, owing to the sinuous course and steep grades of its railway, which was constructed largely on trestles, which were rendered necessary by the peculiar topography of the country through which it ran. That said expenditures having been made for a temporary purpose, to-wit, solely to accommodate the World's Fair traffic, were a total loss to defendant, because of the close of said World's Fair and the dismantling and abandonment of said Taylor City Belt Railway, and that the charges made by defendant to plaintiff for hauling his lumber were wholly inadequate to compensate it for said loss.

"That the defendant was also required to expend large sums of money in clerical hire and otherwise, in preparing way bills and making proper delivery of freight to said Taylor City Belt Railway Company at its junction with the defendant's line. That the service of hauling plaintiff's lumber from the connection with the Missouri Pacific Railway to the World's

Fair site by the Taylor City Belt Railway Company was also unusual, extraordinary, special and exceptional, and said charges were wholly inadequate to compensate said Taylor City Belt Railway Company for the services thus performed, owning to the fact that said Taylor City Belt Railway Company was incorporated for the sole and temporary purpose of transferring passengers and freight from the Missouri Pacific and St. Louis & San Francisco Railways to the World's Fair site, and *vice versa.*

"That the building of said road was very expensive, for the reason that it had to be constructed for almost its entire length on trestles, and owing to the number of sharp curves and steep grades, its operation was very expensive, in that an engine could not haul more than from five to seven cars on one trip in either direction.

"That said railway has been wholly dismantled and abandoned since the close of the World's Fair, and that the revenues derived by it from the transportation of freight and passengers thereover fell far short of the cost of operation and construction, and that the freight charges paid by plaintiff to said Taylor City Belt Railway Company for hauling its lumber, was, therefore, wholly inadequate to compensate said Taylor City Belt Railway Company for its said service which was rendered without profit and at a great loss to it; that said charges ought to have been at least twice as high in order to have rendered them remunerative.

"Defendant further avers that it had nothing to do with the fixing of the four dollar charge made by the Louisiana Purchase Exposition Company for the admission and handling of carload freight to and on the World's Fair Grounds; that that was a charge and exaction over which neither this defendant nor the Taylor City Belt Railway Coupany had any control, which plaintiff well knew, at the time said charges were

paid to said Louisiana Purchase Exposition Company. That said Louisiana Purchase Exposition Company exacted the prepayment of said four dollar charge on each and every carload of freight which entered the World's Fair Grounds, and that fact was well known to plaintiff and all other shippers who sent carload freight into said World's Fair Grounds.

"Defendant further avers that plaintiff, at the time he paid said freight charges to it and the Taylor City Belt Railway Company and the Louisiana Purchase Exposition Company, did so voluntarily and without complaint or protest to either of said companies, or to the Missouri Railroad and Warehouse Commission, and that he is, therefore, now estopped from claiming that said charges were illegal or excessive.

"Defendant further says that to require it to refund or pay to plaintiff any of the moneys received by it for freight charges aforesaid will be to deprive it of its property without due process of law, and deny to it the equal protection of the laws in violation of the Fifth Amendment to the Constitution of the United States and of section 1 of the Fourteenth Amendment of the Constitution of the United States, and of section 30 of article 2 of the Constitution of the State of Missouri.

"Defendant denies each and every other allegation in plaintiff's petition contained, not hereinbefore expressly and specifically admitted."

Plaintiff filed a reply in the nature of a general denial.

The plaintiff offered but two witnesses, whose testimony was brief and bore upon formal matters.

The defendant offered the testimony of seventeen witnesses, many of them being railroad men of intelligence and wide experience. This testimony covers more than one hundred printed pages, and for that

reason it would merely prolong this opinion to set out even the substance of it.

They corroborated the principal portion of the testimony offered by the plaintiff and established beyond a reasonable doubt the allegations of the answer, and showed in their opinions that the ten dollar switching charge was, under the circumstances, reasonable and proper.

At the close of all the evidence, introduced by the plaintiff and the defendant, the court, at the request of the defendant and over the objection of the plaintiff, "declared the law to be, that under the pleadings and evidence in this case the plaintiff is not entitled to recover," and thereupon found against the plainttiff and in favor of the defendant, and rendered judgment accordingly. Within proper time and in due form the plaintiff appealed the cause to this court.

Counsel for appellant has assigned in this court the following errors:

1. The judgment and finding of the court in finding against complainant's right to recover was rendered in disregard of the uncontradicted evidence.

2. The finding of the court was contrary to the law.

3. The finding and judgment of the court should have been in favor of the plaintiff.

4. The court erred in excluding relevant, competent and material testimony offered by the plaintiff.

5. The court erred in admitting irrelevant, incompetent, illegal and immaterial testimony offered by defendant, and to the hurt and prejudice of the plaintiff.

6. The court erred in giving the instruction asked by the defendant.

7. The finding of the court was contrary to the weight of the evidence.

8. The court erred in overruling the objection of the plaintiff to the admission of testimony offered and introduced by the defendant.

9. The court erred in sustaining the objection of the defendant to testimony offered by plaintiff.

I. The first insistence of counsel for appellant is stated in the following language:

"The testimony of the plaintiff, together with the finding and order of the Board of Railroad and Warehouse Commissioners, made a case of an unlawful, unreasonable and unjust charge for switching, which was not overcome by the defendant's testimony."

In support of that insistence we are cited to section 1126, Revised Statutes 1899, now section 3173, Revised Statutes 1909.

This section of the statute governs what is known in railroad parlance as "the long-and-short haul," and reads as follows:

"No railroad corporation organized or doing business in this State, under any act of incorporation or general law of this State, now in force or which may be hereafter enacted, shall directly or indirectly charge or collect, for the transportation of goods, merchandise or property on its said road for any distance, any larger or greater amount, as toll or compensation, than is charged or collected for the transportation of similar quantities of the same class of goods, merchandise or property over a greater distance upon the same road, nor shall such corporation charge different rates for receiving, handling or delivering freight at different points on its road or roads connected therewith, which it has a right to use, nor shall any such railroad corporation charge or collect, for the transportation of goods, merchandise or property over any portion of its road, a greater amount as toll or compensation than shall be charged or collected by it for the transportation of similar quantities of the same class

of goods, merchandise or property over any other portion of its road of equal distance; and all such rules, regulations or by-laws of any railroad corporation, as fix, prescribe or establish any greater toll or compensation than is hereinbefore prescribed, are hereby declared to be void.''

In our opinion this statute does not control this case, for several reasons.

(a)  In the first place, this statute only applies where the long-and-short hauls are made over the same road; while in the case at bar it stands undisputed that the two hauls mentioned in this record were made over different lines of road; namely, one was over the defendant's road, the Missouri Pacific, and the other over the Taylor City Belt Line Railroad Company.

While it is true, the Board of Railroad and Warehouse Commissioners and some of the witnesses introduced for the appellant considered or treated the Taylor City Belt Line Railroad as a spur or switch to the Missouri Pacific and the St. Louis & San Francisco lines, nevertheless, all the competent evidence introduced shows beyond cavil that it is a separate and distinct company, duly organized and incorporated under the laws of the State of Missouri; and the mere fact that its officers are, or may be, officers in other railroad companies, does not in the least change the character of the Belt Line Company.

This was expressly so decided by this court in the case of Kansas & Texas Coal Ry. v. Northwestern Coal & Mining Co., 161 Mo. 288, l. c. 305. The same rule has been announced in the following cases: Pullman Co. v. Railroad, 115 U. S. 596; State ex rel. v. Missouri Pac. Ry. Co., 237 Mo. 338; State ex rel. v. Railroad, 241 Mo. 1; Railroad v. Alling, 99 U. S. 479; Smyth v. Ames, 169 U. S. 546.

We have been cited to no authority to the contrary, nor do we know of the existence of any such.

(b)  In the next place, the record wholly fails to show that the appellant in this case made the complaint to the Board of Railroad and Warehouse Commissioners, challenging the reasonableness and legality of the ten dollar switching charge mentioned in the evidence, but upon the contrary, the proceedings of the board and its decision filed in that case, show that said complaint was made by the St. Louis Lumbermen's Association, and not by the appellant.

The statute requires all such complaints to be investigated and tried by the board, upon evidence introduced; also that its proceedings and decision shall be made of record and prescribes heavy penalties against all who violate the statute and disobey the decision of the board.  Being highly penal, the statute must be strictly construed, and parol evidence should not be admitted to show that the complaint and proceedings made and had before the board in the name of the St. Louis Lumbermen's Association was in truth and fact made for and on behalf of the appellant, which it nowhere appears from the face of the entire proceeding and decision rendered thereon, was a party thereto or had any interest therein whatever, either directly or indirectly.

That being true, the appellant had no legal standing in the circuit court, for the obvious reason that a legal finding and award by the board in favor of the appellant was a necessary prerequisite to the institution of this suit, which is predicated upon that finding and award; they being illegal, this suit must fail.

(c)  Again the St. Louis Lumbermen's Association, being a voluntary, unincorporated association, as such, has no legal authority to sue or be sued, in its own behalf, much less for the use and benefit of another, as it is claimed it attempted to do in this case, by making complaint before the Board of Railroad and Warehouse Commissioners, in behalf of the appellant.

Viewing the case under the light of the foregoing observations, the trial court was fully justified in declaring, as a matter of law, that the plaintiff was not entitled to a recovery, notwithstanding the finding and decision of the Board of Railroad and Warehouse Commissioners being in its favor.

II.   It is next insisted by counsel for appellant that the parol evidence introduced by it, together with the finding and decision of the Board of Railroad and Warehouse Commissioners, in its favor, made for it a prima facie case, and that thereafter the circuit court, in giving a peremptory instruction in the nature of a demurrer to the evidence, declaring that the plaintiff was not entitled to a recovery, was manifest error.

We will concede for the sake of the argument, without deciding the question, one way or the other, that the plaintiff's evidence made out for it, as claimed, a prima facie case.

While the conclusions reached and announced, by us, in the former paragraph of this opinion, necessarily disposes of this insistence adversely to the contention of the appellant, nevertheless, it deserves some additional consideration.

Ordinarily it is true that where the plaintiff in a cause makes out a prima facie case, it is error for the trial court, thereafter, to give a peremptory instruction declaring that he cannot recover therein. [Crossett v. Ferrill, 209 Mo. 704.]   But this general rule of practice, like most others, has its exceptions and limitations; and among them is the following:

If the evidence in rebuttal is in writing, or a matter of record, and stands undisputed, and it completely overcomes and destroys the prima facie case made, then it is perfectly proper for the court to declare the legal effect of said writing or record, by declaring, as a matter of law, that the plaintiff is not

entitled to a recovery, notwithstanding the prima facie case previously made by the evidence. This is elementary and the citation of authorities in support thereof is unnecessary.

We, therefore, decide this insistence against appellant.

III.   Error is also assigned in the action of the circuit court in declaring that the plaintiff was not entitled to a recovery, even though it may have believed and found that the three dollar switching charge established by the decision of the Board of Railroad and Warehouse Commissioners, was unreasonable and void, but should have found and declared what would have been a reasonable and proper charge, and should have rendered judgment in favor of the appellant therefor, as provided for by sections 1150 and 1151, Revised Statutes 1899, now sections 3201 and 3202, Revised Statutes 1909.

There might have been some force and merit in this contention, if the proceeding which was instituted before the board, and in which said three dollar charge was established, had been legally instituted by and upon the complaint of the appellant as provided for by section 1141, Revised Statutes 1899, now section 3192, Revised Statutes 1909.

But that was not done, as we have shown in paragraph two of this opinion. For this reason we must decide this contention against the appellant.

IV.   There are two other questions presented and discussed, by counsel for appellant, in the briefs filed. One was a question of practice regarding the admission of testimony, and the other goes to the wilful disobedience of the order of the board, by the respondent, which bears upon the right of the court to fine the latter.

It is evident, from the views we have expressed of this case, that it is unnecessary to decide either of those two questions.

We are, therefore, of the opinion, that the judgment should be, and it is accordingly affirmed. All concur.