Percy SLOSS, (Plaintiff) Respondent,

v.

FARMERS MUTUAL AUTOMOBILE
INSURANCE COMPANY,
(Defendant) Appellant.

No. 30687.

St. Louis Court of Appeals.

Missouri.

Oct. 17, 1961.

McClintock & Medley, E. L. McClintock, Jr., Flat River, for appellant.

Robert L. Carr, Potosi, for respondent.

RUDDY, Judge.

This is an action to recover a fire loss under an alleged policy of insurance. The trial before a jury resulted in a verdict for plaintiff in the amount of $4,500. Defendant appealed.

In his petition plaintiff alleged that on or about March 18, 1958, in consideration of the payment of a premium of $20 defendant issued its policy of insurance in writing and thereby insured plaintiff against any loss or damage by fire to the amount of $5,000 upon his dwelling house located at and numbered as 914 Dunklin Street in the City of Potosi, Missouri.

It was further alleged in said petition that said dwelling house was damaged and

destroyed by fire on October 4, 1958, while Policy No. 24F–70628 was in force and that said policy of fire insurance was destroyed in the fire; that after due notice and proof of the fire and loss to the defendant, said defendant has paid no part of the loss.

Defendant in its answer denied that Policy 24F–70628 insured 'a dwelling house located at 914 Dunklin in Potosi, Missouri.

At the trial plaintiff testified that he then lived at 906 Dunklin Street, Potosi, Missouri. On March 18, 1958, he was the owner of two houses on Dunklin Street, one numbered 906 situated on part of Lot 6 Block One of Coleman's Second Addition to Potosi, Missouri, and the other numbered 914 situated on Lots 6 and 7 of Block Two of Coleman's Third Addition in Potosi, Missouri.

In March of 1958 plaintiff lived at 914 Dunklin Street. Both houses were insured through Coleman and Whitehead, insurance brokers. In the course of his direct examination plaintiff was asked, "When did the insurance on 906 Dunklin Street expire?" and he answered, "March 18." Thereafter, plaintiff's attention was directed to the house at 914 Dunklin Street and he was asked when the insurance expired on that house and he answered, "March 18." He then said that the insurance on 906 Dunklin Street expired October 16, 1958.

Coleman and Whitehead Agency sent a notice to plaintiff advising him that "a certain policy numbered so and so was expiring." It contained no description of the property insured. Plaintiff took this notice to Mrs. Lottie Breckenridge in her office on March 18, 1958. No one, other than plaintiff and Mrs. Breckenridge was present on the occasion.

Plaintiff paid Mrs. Breckenridge $20 which he said was "for the policy." He said that he had several other policies of insurance placed with Mrs. Breckenridge's company, "the Farmers Mutual Automobile Insurance Company," prior to March 18, 1958. These policies covered other prop-

erties owned by plaintiff. Some of these policies were kept in a trunk and some in a chest of drawers at plaintiff's residence.

Mrs. Breckenridge had talked to plaintiff on different occasions about writing the insurance on 914 Dunklin Street. Plaintiff described the conversation that took place on March 18, 1958, in the following manner:

"Q. Did you describe the property to be insured? A. I told her where I lived, 914 Dunklin—

"Mr. McClintock: Just a minute. That question can be answered yes or no.

"Q. Did you describe the property? A. That is the only way.

"Q. How? A. She had been wanting the house at 914 Dunklin.

"Q. Did Mrs. Breckenridge make any statement about the description? A. No, she didn't ask me no more. She pushed things back on her desk and told me she would fix it up later for me."

On cross-examination plaintiff testified he told Mrs. Breckenridge he wanted 914 Dunklin insured. When asked if there was any discussion about 906 Dunklin, plaintiff answered, "I don't remember." Plaintiff said he told Mrs. Breckenridge to change the old policy which insured the house for $4,000 and the contents for $1,000 to $5,000 insurance on the house and to omit the insurance on the contents.

Plaintiff further testified that Mrs. Breckenridge had him sign an application "in blank." He did not see the application after it "was filled in," and did not know what was in the application when it was forwarded to defendant. A couple of weeks later plaintiff received a policy of insurance from Mrs. Breckenridge at his home at 914 Dunklin Street. He said that Mrs. Breckenridge "told me she had my policy." He then said: "I pulled my policy

out of the envelope. It wasn't sealed, just looked in there, and I just happened to notice the heading. It said, 'Percy Sloss, Insured, 914 Dunklin, for $5000.' " On cross-examination he said Mrs. Breckenridge told him the policy insured 914 Dunklin, but admitted he did not read the contents of the inside of the policy. After pulling out the policy and reading the heading he went into the house and placed the policy with some letters on a chest of drawers. When the house burned the policy burned with the letters. When plaintiff was asked if some of the other policies were burned in the fire, he answered, "No, I don't know whether there was any of them burned up besides this one or not."

Plaintiff at another place in his direct examination testified that Mrs. Breckenridge had spoken to him several times about the insurance on his home. He was again asked, "Did she say anything to you about the description of the house to be insured?" and he answered, "The only description is what I said while ago, the house that I lived in at 914 Dunklin, and she knew well where it was for she had been there several different times." After plaintiff put the policy away on the day that Mrs. Breckenridge delivered it, he never saw it again.

The house at 914 Dunklin Street was burned on October 4, 1958. Plaintiff said he called Mrs. Breckenridge and she came to the fire. When he was asked if she said anything to him about the insurance on the property, he answered, "Yes, she told me the reason she didn't get there any sooner she was looking over her records and she didn't find where she had it." On cross-examination he said she told him the policy did not cover 914 Dunklin, stating that she said, "she got the wrong house."

He further said that Mrs. Breckenridge and plaintiff's son searched in plaintiff's trunk and around the house to see if they could find the policy. He said, "We had a little argument there." Further, in talking about the insurance policy, he said, "When she said she didn't know whether she had, she couldn't find any trace of it, I told her, at that time, and she told my son and me, 'Yes, I do, I remember it.' " Thereafter, she went back to her office with plaintiff's son to see if she could find any trace of the policy.

Plaintiff was asked, "Q. She said she remembered what?" and he answered, "Remembered me telling her what I did about insuring the house for $5000 instead of $4000 and to leave the furniture go. * * Q. Did she say anything to you then and there about what house was insured? A. Yes, she said she had the other house insured instead of that one."

On a later date when plaintiff discussed the insurance policy and the property insured therein with Mrs. Breckenridge, he said the following conversation took place:

"She said to me these words, she said, 'Well, Mr. Sloss, I believe you are just mistaken.' I said, 'How do you figure it that way?' She said, 'Well, if you had read your policy you could have come back to me and had it corrected.' I said, 'Well, listen, I paid you to do it right in the first place and I expected it to be right.'

"Q. Did you ask her to notify the company of your loss? A. Yes, I did."

Later an agent or adjuster for defendant company looked over the property. Plaintiff was asked if he asked the adjuster to pay for the fire loss and he answered, "No, I didn't ask him nothing about that."

Plaintiff further testified that immediately before the fire on October 4, 1958, his residence at 914 Dunklin was worth $5,500 and immediately after the fire occurred he placed its value at $500 or maybe $1,000. He described the nature of the damage to the house caused by the fire and when asked if he obtained prices or bids for the cost of repairs, he answered, "Some, not very much." He estimated the price of material for repairing the property would be $2,500

and he had an idea it would cost around $2,000 for the labor. He based this idea on talks he had with one or two carpenters. He further testified that he owned the property at 906 Dunklin Street which was insured through Coleman-Whitehead Insurance Company in the sum of $5,000.

Plaintiff admitted that the premium notices on all his policies with defendant were sent to 914 Dunklin and he admitted that the outside "heading" of the other policies, covering other properties, all "said 914 Dunklin on them too," the same as the one he described receiving from Mrs. Breckenridge. He said this address appearing below his name on the outside of the policy made him "think" he had insurance on 914 Dunklin. In this same connection, he said he thought all the policies he received, showing 914 Dunklin on the outside of the policy, insured said property. At another place in his testimony he admitted all of the policies showing 914 Dunklin on the outside did not insure 914 Dunklin. He did not open the policy and read the contents on the inside at any time. He testified that 914 Dunklin had a sheet iron roof and 906 had composition shingles on the roof.

Plaintiff identified defendant's Exhibit 3, which was a duplicate of policy No. 24F-70628, issued by defendant to be effective March 18, 1958, and insured a "family dwelling, situated at 906 Dunklin" followed by a legal description which plaintiff thought was that of 906 Dunklin.

Percy Lynn Sloss, son of plaintiff, testified that Mrs. Breckenridge said at the scene of the fire that she had insured the house that burned

Plaintiff in his case offered and introduced in evidence a fire insurance policy issued by the New Amsterdam Casualty Company covering 914 Dunklin Street which expired on March 18, 1958. Also, offered in evidence, was a policy issued by the Home Insurance Company covering 906 Dunklin which expired October 16, 1958.

In defendant's case the deposition of Lottie Breckenridge was introduced and admitted in evidence. She testified that on March 18, 1958, and prior thereto, she was in the insurance business in Potosi, Missouri, and served as agent for defendant. She had dealings with plaintiff over a period of 2½ years, stating she had insured "some houses for him." On March 18, 1958, plaintiff came to her office and told her he had another house to be insured and was going to let her write the insurance through defendant company because it was cheaper. He told witness that he had 906 and 914 Dunklin insured with the Coleman and Whitehead Agency and the fire insurance on one of them was expiring. He was not sure which house "the insurance was due on." Plaintiff finally told her that the fire insurance on 906 Dunklin was expiring. Plaintiff brought with him to the office of Lottie Breckenridge a "slip of paper from the other agents" which contained a policy number but no property description. This was a notice of expiration to plaintiff from Coleman and Whitehead Agency. Lottie Breckenridge prepared an application for fire insurance coverage in defendant company on 906 Dunklin Street. In response to questions put to plaintiff by her, he told her the house at 906 Dunklin had a composition roof and was of frame construction. She said these answers were in accord with her own knowledge of 906 Dunklin. She knew that 914 Dunklin had a tin roof. Plaintiff could not give witness the legal description of 906 Dunklin and she then told plaintiff she would obtain it from the courthouse.

Lottie Breckenridge identified defendant's Exhibit 1 as the original application signed by plaintiff in her presence. The application showed 906 Dunklin as the property insured. She said the application was mailed to defendant on March 18, 1958. Thereafter, a policy was issued pursuant to the terms of the application and witness delivered said policy to plaintiff a

week or ten days after the application was signed.

Lottie Breckenridge further testified that subsequent to March 18, 1958, she wrote fire insurance for plaintiff through defendant company on two other houses, at which time she reminded plaintiff that defendant company carried the fire insurance on 906 Dunklin. She said she never did write any insurance coverage on 914 Dunklin and had never been requested to do so by plaintiff.

On October 4, 1958, the date of the fire, a boy sent by plaintiff told her about the fire. Thereafter, in her conversations with plaintiff she told him and his son that she did not have 914 Dunklin insured. She said that on one occasion plaintiff "tried to get me to say that I had copied the wrong description, so the company would pay off." She stated that plaintiff said that he was going to stick to his story that she insured 914 Dunklin and she again told him that she had not insured that property. She stated she pointed out to plaintiff that the application showed the type of roof on the property insured was a composition roof which fitted that of 906 Dunklin Street, whereas the roof on the house that burned at 914 Dunklin was made of tin.

Leo Stock, witness for defendant, testified that he was an employee of defendant and it was his duty to approve applications submitted for policies. He explained the procedure that is followed in connection with the preparation and issuance of a policy after an application is received. After a policy is prepared it is then sent to the agent for her counter signature and delivery to the insured. He stated that an original and copies are made when the policy is typed. The original is sent to the agent for delivery to the insured and a copy is sent to the agent for her files. A copy is retained in the defendant's files. (Defendant's Exhibit 4.) Copies are identified by policy numbers. Defendant's Exhibit 1 was shown to the witness and he identified it as the original application received at the home office and signed by plaintiff. The application showed that policy 24F–70628 was issued pursuant to the application. Witness also identified defendant's Exhibit 4 as the first duplicate of the copy that was issued to the plaintiff and had remained in defendant's files. The number of the policy is printed on the original and first duplicate by the printer when printing the policy form.

Stock testified that the number of the first duplicate corresponded to the number printed on the original policy delivered to plaintiff and was the same number that appears on the application previously identified by the witness. Defendant's Exhibits 1 and 4 were offered and admitted in evidence. The property described in both exhibits was 906 Dunklin Street.

Defendant makes two principal contentions. (1) Plaintiff failed to prove by substantial evidence that a policy of insurance covering 914 Dunklin was in existence and, therefore, plaintiff failed to establish a prima facie case. (2) If plaintiff did make a submissible case by oral testimony on his theory of the case, his prima facie case was clearly met and destroyed by the undisputed documentary evidence introduced by defendant, which defendant says included the original application signed by plaintiff and a copy of the original policy issued on property at 906 Dunklin.

Before considering the contentions advanced by defendant, we deem it advisable to define precisely the theory under which plaintiff sought recovery as disclosed by his petition and the instructions to the jury. Plaintiff, in his petition, alleges that defendant, "made its policy of insurance in writing, and thereby insured" plaintiff "against any loss or damage by fire in the amount of Five Thousand Dollars ($5000.-00) upon his dwelling house located at and numbered as 914 Dunklin, * * *."

Plaintiff further alleged "that said policy of insurance in writing was numbered 24F–70628." Thereafter, plaintiff pleaded the damage by fire of said dwelling house

and defendant's refusal to pay the amount due pursuant to the terms of the policy.

Plaintiff's principal instruction told the jury to find the issues in his favor if the jury found and believed from the evidence that a "contract and policy of insurance was issued to the plaintiff by the defendant on March 18, 1958, for a valuable consideration, and that said contract and policy of insurance was on and covered the plaintiff's house mentioned in evidence as located at 914 Dunklin Street, in the City of Potosi, Missouri, * * * and if you do further find and believe from the evidence in this case that said contract and policy of insurance was in force and effect on October 4, 1958, insuring and covering plaintiff's house known as and numbered 914 Dunklin Street in the City of Potosi, Missouri, and if you further find that on October 4, 1958, said house was damaged by fire, then you will find the issues in favor of the plaintiff, Percy Sloss."

Defendant in a converse instruction told the jury that "if you find from the evidence that defendant did not at any time prior to the fire in question, issue a policy of insurance on the house located at 914 Dunklin Avenue in Potosi, Missouri, your verdict must be for the defendant."

It is clear from a reading of the allegations of the petition and plaintiff's instruction to the jury that he seeks recovery on the theory that defendant had made and issued its contract and policy of insurance wherein it insured the dwelling house of plaintiff located at 914 Dunklin Street, Potosi, Missouri, and that said contract of insurance was in existence and in effect on the date of the fire.

■ Plaintiff in his testimony insisted that he told defendant's agent he wanted a fire insurance policy on 914 Dunklin Street. However, it is obvious from the pleadings and instructions that plaintiff was not seeking a reformation of an insurance policy because it was not in accord with the verbal instructions of plaintiff as to the property to be insured when plaintiff applied for the fire insurance coverage on March 18, 1958. Of course, such relief, equitable in nature, could not be granted by a jury. In his petition and instructions plaintiff did not claim any mutual mistake and, as we said is not seeking reformation of an insurance contract, but bases his cause of action upon the fact that defendant issued a fire insurance policy that insured 914 Dunklin Street and that such a policy in that form existed at the time of the fire.

■ Nor can we see how plaintiff could contend there was any estoppel on the theory that if an error was made, it was the error of defendant's agent and, therefore, defendant would be estopped from contending that the policy covered property other than that applied for according to plaintiff's testimony. Plaintiff cannot rely on this theory of recovery for the obvious reason that the jury was never called upon to resolve the conflict between the testimony of plaintiff and that of Lottie Breckenridge on what was said when plaintiff applied for the insurance on March 18, 1958.

We are not ruling that such a plea of estoppel was available to plaintiff. We merely point out that the facts which might form the basis for such theory were never pleaded or presented to the jury for determination.

■ It is sufficient to say that plaintiff cannot recover upon a theory of the case not consistent with that upon which his petition and instructions proceed and this is true even if his evidence might permit recovery on another theory.

The decisive question, therefore, is whether the evidence was sufficient from which a jury could find that defendant made and issued a policy of insurance, wherein it insured plaintiff against fire loss or damage to property known as 914 Dunklin Street and that such a contract and

policy of insurance was in effect on the date of the fire loss.

■ That a policy of fire insurance was made and issued by defendant and delivered to plaintiff is not in controversy. The only controversy, as gleaned from the pleadings, instructions and evidence, was the address of the property protected by said policy. It was plaintiff's burden to prove that defendant issued and delivered to him a policy of insurance covering 914 Dunklin Street, Potosi, Missouri. We think plaintiff failed to sustain his burden.

Because of the need to reverse the lower court's judgment, we have, as no doubt has been noted by the reader, related in somewhat extended form the testimony and evidence offered in the case. However extensive may have been our summation of the testimony and evidence, it will not take extended discussion to demonstrate that plaintiff failed to show that the policy he received covered 914 Dunklin. Under plaintiff's theory of recovery, as we have stated it, we can forget about plaintiff's testimony as to what was said when he applied for insurance on March 18, 1958.

It will be remembered that plaintiff testified that the policy he received from Lottie Breckenridge was destroyed in the fire. The only testimony by plaintiff involving the delivery and receipt by him of an insurance policy was that Lottie Breckenridge delivered a policy to plaintiff's home at 914 Dunklin Street, at which time she told him that "she had my policy." This was the only occasion when plaintiff made any attempt to determine the nature, extent and coverage of the policy delivered to him by Lottie Breckenridge. The attempt that he made was wholly insufficient to acquaint him with the address of the property covered by the policy of insurance delivered. It will be recalled that he testified that he pulled the policy out of the envelope it was in and that he merely looked at the heading which contained the following "Percy Sloss, insured, 914 Dunklin for $5000." After pulling the policy out of the

envelope and merely reading the heading of same, he took the policy and placed it with some letters in a chest of drawers. He testified that after he put the policy away on this occasion, he never saw it again. He admitted that he never did read the contents on the inside of the policy, which contents would have informed him as to the property insured. Plaintiff admitted that the outside "heading" of other policies of insurance received by him covering properties other than 914 Dunklin Street "said 914 Dunklin on them too." From this we infer that plaintiff meant that the outside heading on policies covering properties other than 914 Dunklin Street were the same as the heading on the policy he received on the day in question from Lottie Breckenridge. His attempt to excuse his failure to read the policy by saying that the outside heading, as described by him, made him "think" he had insurance on 914 Dunklin Street was wholly insufficient to show that the policy he received, on the occasion mentioned, covered 914 Dunklin Street in Potosi, Missouri.

■ If we were to assume that plaintiff made a submissible case, nevertheless, it is clear to us that such a prima facie case, if made, was completely destroyed by the documentary evidence introduced in defendant's case. The rule is that a directed verdict should be given when a prima facie case has been completely destroyed by unimpeached and uncontradicted documentary evidence. Darlington Lumber Co. v. Missouri Pacific R. Co., 243 Mo. 224, 147 S.W. 1052; Citizens Bank of Liberty v. Thompson, 234 Mo.App. 448, 132 S.W.2d 700; Yarber v. Connecticut Fire Ins. Co., Mo. App., 10 S.W.2d 957; Kazee v. Kansas City Life Ins. Co., Mo.App., 217 S.W. 339.

■ Opposed to plaintiff's oral testimony was the documentary evidence introduced by defendant. Defendant's Exhibit 1 was the original application for insurance which plaintiff admitted he signed. This application was sent to the defendant, Insurance Company, and showed the property insured

as 906 Dunklin Street. We are mindful that plaintiff testified that he asked Lottie Breckenridge to insure 914 Dunklin and that she testified plaintiff asked her to insure 906 Dunklin. As we said before, we are not concerned with this conflict in the testimony of these two witnesses, inasmuch as plaintiff's adopted theory of recovery did not submit this issue to the jury for determination. The significance of this document under plaintiff's theory of recovery is that it is undisputed that the application shows 906 Dunklin as the property to be insured and it was admitted by plaintiff that he signed the application.

Also, it is undisputed that Defendant's Exhibit 1 was the basis for the making and issuing by defendant of Policy No. 24F–70628. Plaintiff admits receiving a policy of insurance which he identified and described in his petition as bearing No. 24F–70628.

Defendant's witness, Leo Stock, identified Defendant's Exhibit 4 as the first duplicate of the policy that was issued to plaintiff and that it was prepared simultaneously with the original policy pursuant to plaintiff's application. Defendant's Exhibit 4 bore No. 24F–70628, the same number described in plaintiff's petition. It is undisputed that Defendant's Exhibit 4, a copy of the original policy delivered to plaintiff, shows 906 Dunklin Street as the property insured. The authenticity of these two documents and the property insured in same is uncontradicted. We agree that defendant's agent may have misunderstood plaintiff at the time of their conversation on March 18, 1958. On the other hand, plaintiff may have misstated the address of the property to be insured. Despite this conjecture on our part as to the possibilities of what might have been said, the facts remain, as defendant contends, that both the application and the policy described the property insured as 906 Dunklin Street and not 914 Dunklin Street. These two documents, unimpeached and uncontradicted, destroyed plaintiff's prima facie case, if any.

Plaintiff having adopted Policy No. 24F–70628 as the foundation of his action, cannot now be heard, under his theory of recovery, to deny its contents. The trial court should have directed a verdict for defendant.

The judgment of the lower court should be reversed. It is so ordered.

ANDERSON, P. J., and ELGIN T. FULLER, Special Judge, concur.